OPINION
{¶ 1} Defendant-appellant, Keith E. Burke, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of murder in violation of R.C. 2903.02, with a firearm specification, pursuant to R.C. 2941.145, and sentencing him accordingly. For the following reasons, we affirm that judgment.
 {¶ 2} By indictment filed June 25, 2002, appellant was charged with one count of murder in violation of R.C. 2903.02, with two firearm specifications pursuant to R.C. 2941.141 and 2941.145, as well as one count of tampering with evidence in violation of R.C. 2921.12. The charges arose from the shooting death of Curtis White on May 26, 2002. Appellant entered a not guilty plea to the charges and proceeded to trial. Appellant waived a jury trial and tried the matter to the court.
 {¶ 3} The trial transcript reveals the following facts. Teresa Chamblis ("Teresa") was the first witness to testify about the events that occurred on May 26, 2002. On that day, Teresa had a Memorial Day cookout at her house. Teresa and Curtis White, a man whom she considered to be her common-law husband, lived together at that house. Among the friends and family members at the cookout that day were two of Teresa's adult children, Denise Parks and Ronrico Chamblis. Ronrico brought his friend, appellant, to the cookout. Teresa testified that sometime that evening she found Ronrico and White arguing in the kitchen. Teresa and Denise took Ronrico out of the kitchen, through the living room and out the front door to the front porch. Teresa then went back to talk to White in the kitchen. However, a few minutes later, Ronrico came back into the kitchen. White then chased Ronrico out the back door and around to the front of the house. Teresa followed them out the back door and around the house. When Teresa got around to the front of the house, she saw White inside the fence by the front fence gate. Apparently, Ronrico had fallen over some steps outside the fence gate and was on the ground by the sidewalk. Teresa further testified that White turned around and went up the steps to the front porch, where appellant was standing. Once White got onto the front porch, he and appellant began wrestling. Teresa thought they were wrestling over a gun. Teresa then saw White step back from the fight and appellant fire one shot at White. She saw no one else on the front porch when appellant shot White.
 {¶ 4} The next eyewitness to testify was Leverne Thurman. Thurman was seated in the living room when he heard the argument in the kitchen between Ronrico and White. He testified that Teresa took Ronrico from the kitchen, out through the living room to the front porch. Denise and appellant were also on the front porch. Thurman could tell that Ronrico was upset and he heard Ronrico say that White "had to go." Thurman then saw appellant and Denise try to stop Ronrico from leaving the porch. Shortly thereafter, he saw all three get up and go around the side of the house. Subsequently, Thurman heard the noise level escalate and he got up and looked out the front door which opened directly to the front porch. He saw that Ronrico was on his back on the sidewalk outside the front gate. Thurman testified that Ronrico would have been about 16 feet away from the front door. He then saw White close the front gate and walk up the steps to the front porch. When White got up to the front porch, Thurman heard appellant say, "You so bad, take this" and immediately heard a single gunshot. He did not see the two wrestle. Immediately after he heard the gunshot, Thurman heard appellant say, "What you gonna do now, Curt, huh, what you gonna do now?" Thurman saw no one other than White, Teresa and appellant on the front porch shortly after the gunshot. Thurman then heard Teresa ask appellant why he shot White. Appellant did not answer but simply shrugged his shoulders.
 {¶ 5} Ronrico Chamblis testified on appellant's behalf. He testified that he arrived at his mother's house with appellant late in the evening. He and appellant were good friends and had known each other for years. According to Ronrico, shortly after he arrived at the cookout, White began arguing with him about why he had not brought any beer. Ronrico ignored White at the time. However, Ronrico testified that White began to argue with him later in the evening when the two were in the kitchen together. Ronrico testified that Teresa, Denise and appellant broke the argument up and took Ronrico out of the kitchen and to the front porch. However, Ronrico then went back to the kitchen where he again had words with White. White then chased him out the back door. Ronrico testified that he ran around to the front of the house where he tripped over some steps outside the front gate and fell onto the sidewalk. Ronrico then saw White walk up the steps to the front porch where appellant was standing and then heard a gunshot. He did not see White make it to the porch and did not hear any words exchanged between appellant and White. Although he first testified that he did not see appellant with a gun, on cross-examination, Ronrico admitted to telling a detective that he saw appellant tuck something black into his pants pocket that could have been a gun after the shooting. He also testified that he did not have a gun while at the cookout.
 {¶ 6} Denise Parks was the next to testify for appellant. Denise testified that her mom and appellant broke up an argument in the kitchen between Ronrico and White. After that, she saw White chase Ronrico around the house to the front of the house. When they got to the front of the house, Denise saw Ronrico running beyond the front gate and White stepping up to the front porch when she then heard a gunshot. She testified that she did not think Ronrico fell onto the sidewalk, nor did she see appellant on the front porch. She never saw a gun at the cookout.
 {¶ 7} Finally, appellant testified on his own behalf. He testified that he was helping Ronrico move into his mother's house the day of the cookout. After they arrived at the cookout that evening, appellant heard White and Ronrico arguing in the kitchen. Hearing the argument, appellant walked into the kitchen and saw the two arguing. He testified that he then saw Ronrico go to the basement and grab a gun. Appellant then saw Teresa come into the kitchen and tell Ronrico to put the gun away. Appellant then took Ronrico out of the kitchen to the front porch, where he took the gun from Ronrico. Appellant, Ronrico and Denise were together on the front porch. Appellant testified that Ronrico was upset and told him that White had to go. Although appellant tried to calm Ronrico down, Ronrico and Denise went back inside the house while appellant remained on the front porch. Appellant testified that Ronrico then came out of the house running to the front porch and grabbed the gun appellant had in his hands. While Ronrico was grabbing at the gun, White came upon them and grabbed for the gun as well. Appellant then backed off while Ronrico and White wrestled with the gun. At that moment, appellant heard a gunshot.
 {¶ 8} At the conclusion of the case, the trial court found appellant guilty of murder with a firearm specification but not guilty of tampering with evidence. The trial court sentenced appellant accordingly.
 {¶ 9} Appellant appeals, assigning the following error:
 {¶ 10} "The trial court erred and deprived the defendant-appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding defendant-appellant guilty of murder as the verdict was not supported by sufficient evidence."
 {¶ 11} Appellant's lone assignment of error attacks the sufficiency of the evidence supporting his murder conviction. In determining the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Martin (Apr. 19, 2001), Franklin App. No. 00AP-836; State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. If any rational trier of fact could have found the essential elements of an offense proven beyond a reasonable doubt, this court will not disturb a conviction. Jenks, supra, at 273; State v. Burnett, Franklin App. No. 02AP-863, 2003-Ohio-1787, at ¶ 15.
 {¶ 12} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79,79-80.
 {¶ 13} Appellant was convicted of murder in violation of R.C.2903.02(A). That statute, in pertinent part, provides that "[n]o person shall purposely cause the death of another." Appellant contends that the evidence at trial failed to demonstrate he acted purposefully in shooting White. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 14} In essence, appellant contends that the evidence presented at trial proves that White was accidentally shot during a struggle and supported a conviction for involuntary manslaughter, not murder. We disagree. Teresa's testimony indicates that appellant and White began to wrestle on the front porch but that White backed away from appellant immediately before appellant shot White. Also, Thurman testified that he heard appellant yell at White, "You so bad, take this" immediately before Thurman heard the shot. Immediately after the shot, Thurman heard appellant say, "What you gonna do now?" Furthermore, Keith Norton, a licensed medical doctor in the state of Ohio and an expert in forensic pathology, testified that there was no stippling around the gunshot wound. Stippling is the reaction of the skin due to particles of gunpowder hitting the skin. The absence of such stippling indicated to Norton that the wound was not a contact wound. Therefore, Norton opined that there was some distance between appellant and White at the time appellant fired the gun.
 {¶ 15} We recognize that appellant's testimony conflicted with the testimony of the other witnesses and could support appellant's theory of the case. However, the trial court obviously did not believe appellant's testimony but, instead, chose to believe testimony from the other witnesses. We find no error in the trial court's decision to reject appellant's version of events. The trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it. State v. Caldwell (1992), 79 Ohio App.3d 667. The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact. Dayton v. Versic (Mar. 15, 1996), Montgomery App. No. CA 15223, quoting State v. Awan (1986), 22 Ohio St.3d 120, 123.
 {¶ 16} When viewing this evidence in a light most favorable to the prosecution, we find that there is sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that appellant acted purposefully and not accidentally in shooting White. Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.